Per Curiam.

Dunkin, Ch.
The bond, which is the subject matter of the second ground of ^appeal, was executed by John Porter, the defendant’s testator, and was conditioned to pay $ 1,121 58, “to Mariah L. Shackelford, executrix, and J. W. Cheesborough, executor, of the estate of Richard Shackelford, or either of them.”
There is no doubt that, if the obligee appoints the obligor his executor, no action can lie at law, and the debt is extinguished. This is fully established by the leading case of Wankford vs. Wankford, 1 Salk. 299. But it is equally well established, as was declared by Sir William Grant, in Berry *281 vs. Usher, 11 Ves. 87, that, in such case, Equity raises a trust, not only for a residuary legatee, but for the next of kin. In Wankford v. Wankford Justice Powell and Lord Holt both agree that “ there would be a great diversity where the obligee made the obligor executor, and where the obligor made the obligee his executor; for, in the last case the debt is not extinct, but only upon supposal that the executor has assets, which he may retain to pay himself; for though the obligee may give the obligor the debt, yet that will not hold vice versa, but in case of failure of assets, the executor may sue the heir.”
It appears on the face of this instrument, that the money was due to Maria L. Shackelford and J. W. Cheesborough, as executors of Richard Shackelford. In this Court Cheesborough would not be permitted to deny his fiduciary character. In 1839 he, as executor of John Porter, confessed a judgment to M. L. Shackelford, which, if it have no other effect, was a recognition by him of the original trust.
It is true that, as executor of Porter, Cheesborough received assets; but it has been judicially ascertained that all these assets were appropriated by him to other debts of his testator. There are other assets of John Porter, (the obligor in the bond,) now to be administered. The petitioner asks to be ranked as a bond creditor in the distribution of these assets. She is met by the technical objection, that the debt of the obligor is extinguished by the appointment of Cheesborough, one of the obligees, as his executor. But it has been shewn that, even at law, this is not necessarily and absolutely a release of the debt, as Lord Kenyon, in a note to Wankford vs. Wankford, is reported to have said, “the proposition that if A owes B a sum of money, and choose to make him his executor, though B will not act, his legal remedy is extinguished, is a proposition too monstrous to admit of any argument.” So it has been seen, that though an executor, in such case, accept and qualify on the will, he may, on failure of assets, sue the heir in a Court of law, for the bond debt due to him by his testator. In this Court, both Cheesborough and Mrs. Shackelford are regarded as trustees for the estate of Richard Shackelford. The surviving trustee has proved that all the assets of the obligor, which came to the hands of his executor, have been applied to the discharge of his other debts. In reference to the question of extinguishment, it is immaterial, in this tribunal, whether the assets were applied to debts of an equal or lower degree. The estate of Porter is not discharged from the debt, because all the funds of that estate have been accounted for, and it has *282 been proved that they were not diminished by any appropriation for the payment of this debt. If Cheesborough were yet alive, he might well be held responsible to the estate of Shackelford for this irregularity in his administration. But on what principle can it be insisted that Porter’s estate, which has not paid the debt, should be discharged, or that the remaining assets should be exonerated, because the previous assets have been otherwise appropriated ? In the judgment of the Court there is error in so much of the Chancellor’s decree as sustains the complainant’s second exception to the Master’s report.
' D. L. McKay was appointed receiver of the estates of John Porter and John Porter, Jun. on the 10th July, 1841. According to the report of the Master, in March, 1843, the estate of John Porter, the elder, was indebted to the executor, J. W. Cheesborough, $926 23, and in June, 1844, a decretal order was made, directing that sum to be paid, with interest from the date of the report, out of the assets of John Porter, the elder, in the hands of the receiver. In January, 1845> this decree was assigned to R. F. W. Allston and J. H. Alisten.— In May, 1846, the Master reported that J. W. Cheesborough. before the hearing of the cause, in 1842, had sold a slave, Jim, belonging to John Porter, Jr. for which he had not been charged in the account. By the recommendation of the Master, the Circuit decree directed that this amount should be deducted from the sum heretofore decreed to be paid to Cheesborough from the estate of John Porter, the elder. But it is not perceived that there exists any privity in the connection of Cheesborough with these estates. The rights of third persons have intervened since the decree of June, 1844, and the claim of the assignees is entitled to the protection of the Court, to the extent set forth in their ground of appeal.
It is ordered and decreed that the decree of the Circuit Court be reformed, according to the principles of this decree. It is further ordered that the Master re-sell the negro, Sye, on the terms prescribed by the former order, the original purchaser having failed to comply with the terms of sale.

Decree reformed.